# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21-cr-466-1 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| HASAN HOWARD, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On July 6, 2022, defendant Hasan Howard ("Howard") was sentenced to an aggregate custody term of 74 months imprisonment, following his guilty pleas to conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); access device fraud, in violation of 18 U.S.C. § 1029(a)(2); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). (Doc. No. 100 (Judgment); *see* Minutes of Proceedings [non-document], 7/6/2022; *see also* Doc. No. 13 (Indictment).) In particular, the Court sentenced Howard to a 50-month custody term for the access device fraud claims to be followed by a 24-month consecutive custody term on the aggravated identity theft conviction. (*See* Doc. No. 100, at 2.)

Now before the Court is Howard's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. (Doc. No. 134 (Motion).) Appointed counsel filed a supplement in support of a sentence reduction. (Doc. No. 136 (Supplement).) Plaintiff United States of America (the "government") opposes the motion. (Doc.

No. 137 (Response).).

The Court employs a two-step approach to deciding whether to reduce a sentence based on a retroactive amendment to the federal sentencing guidelines. First, the Court must consider the scope of the reduction authorized by the amendment, and then it must consider whether such a reduction is warranted based on the factors set forth in 18 U.S.C. § 3353(a). *Dillon v. United States*, 560 U.S. 817, 826, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010) (citing § 3582(c)(2)).

Howard moves for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(o). Specifically, he argues that he is eligible for a reduced sentence under Amendment 821, Part A, which affected the sentencing guidelines' treatment of offenses committed while under a criminal justice sentence. (*See* Doc. No. 134, at 2;[1] Doc. No. 136, at 1–2.) Part A of Amendment 821, which now appears in the guidelines at § 4A1.1(e), limits the criminal history impact of "status points," decreasing them by 1 point for individuals with 7 or more criminal history points and eliminating status points for those with 6 or fewer criminal history points. *See* U.S.S.G. § 4A1.1(e). The Amendment was given retroactive effect, provided that any order reducing a term of imprisonment based on retroactive application of Amendment 821 have an effective date of February 1, 2024, or later. *See* § 1B1.10(e)(2) (Nov. 1, 2023).

At the time of sentencing, the Court calculated Howard's base offense level for the access device fraud claims to be 6. (*See* Doc. No. 125 (Transcript of Sentencing Hearing), at 7; *see also*

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Doc. No. 99 (Final Revised PSR), at 11 ¶ 21.) After the appropriate adjustments were applied (a 12-level increase because the loss was greater than $250,000 but less than $500,000; a 2-level increase because there were 10 or more victims; a 2-level increase for Howard's leadership role in the conspiracy; and a 3-level reduction for acceptance of responsibility) the resulting total offense level was 19. (*See* Doc. No. 125, at 7–8; *see also* Doc. No. 99, at 11 ¶¶ 22–23, 25, 29–31.)

Howard had prior convictions for identity fraud, theft and misuse of credit cards, possession of a defaced firearm, attempted grand theft, and multiple convictions for carrying a concealed weapon, which collectively scored 6 criminal history points. (*See* Doc. No. 125, at 8; *see also* Doc. No. 99, at 12–14 ¶¶ 35–40.)[2] Two more points were added because Howard was under a criminal justice sentence at the time of the instant offenses. (*See* Doc. No. 125, at 8; *see also* Doc. No. 99, at 15 ¶ 43.) With a total of 8 criminal history points, he was a criminal history category IV. (*See also* Doc. No. 99, at 15 ¶ 44.) The advisory guideline range at offense level 19 and a criminal history category IV was 46 to 57 months. (*See* Doc. No. 125, at 8; *see also* Doc. No. 99, at 21 ¶ 76.) Additionally, as previously noted, Howard's conviction for aggravated identity theft carried a mandatory 24-month sentence to be served consecutive to any sentence on the fraud claims. (*See also* Doc. No. 99, at 21 ¶ 76.) The Court imposed a mid-range guideline sentence of 50 months for the fraud claims to be followed by a 24-month sentence for the aggravated identity theft conviction, for an aggregate custody sentence of 74 months. (*See* Doc. No. 100, at 2.)

In his motion (as supplemented), Howard requests that the Court reduce his sentence for the fraud claims, based on the amended guideline range applicable following the changes made to

---

[2] Howard also had numerous other convictions that did not score, as well as pending charges at the time of sentencing that likewise did not factor into his criminal history points. (*See also* Doc. No. 99, at 12, 16–17 ¶¶ 34, 48–54.)

"status points" under Part A of Amendment 821. (Doc. No. 136, at 3.) Under the Amendment, because Howard had 6 or fewer criminal history points, his "status points" would be eliminated, resulting in a total criminal history score of 6, which correlates to a criminal history category III. With a total offense level of 19 and a criminal history category of III, his amended advisory guideline range for the fraud claims is 37 to 46 months. He requests a new sentence at 87% of the high end of the amended advisory sentencing range; namely, 41 months. (*See id.*)

The government concedes that Howard is eligible for a sentence reduction under Part A, but it urges the Court to exercise its discretion in denying Howard's motion (Doc. No. 137, at 1, 5.) In support of its position, the government argues that "Howard has an extensive criminal history—including convictions entered after this Court sentenced him—and a poor disciplinary record while incarcerated. As such, reducing his sentence would not be in the public's interest." (*Id*. at 5.)

The Court agrees with the parties that Howard is eligible for consideration of a sentence reduction under Part A. *See* U.S.S.G. § 1B1.10. Having concluded the amended guidelines range would have been applicable to Howard had the Amendment been in effect at the time of sentencing, the Court proceeds to the second step of the analysis and considers whether such a reduction is warranted based on the factors set forth in § 3553(a). *Dillon*, 560 U.S. at 826 (citing § 3582(c)(2)).

Subject to the limits set forth in U.S.S.G. § 1B1.10(b), a court may consider all pertinent information in applying the § 3553(a) factors and determining whether and by how much to reduce a defendant's sentence. *Dillon*, 560 U.S. at 821–22; *see United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing 18 U.S.C. § 3553(a) and directing district courts to consider all relevant

statutory sentencing factors). Section 3553(a), in addition to requiring consideration of the applicable guidelines and policy statements of the Sentencing Commission, requires the sentencing judge to consider the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from future crimes of the defendant; and (4) to provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner; and (5) the kinds of sentences available. *See* 18 U.S.C. § 3553(a).

Application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment[.]" U.S.S.G. § 1B1.10 app. n. 1(B)(ii). Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment[.]" *Id*. app. n. 1(B)(iii).

The instant fraud offenses were serious. The total amount of the conspiracy was calculated to be $524,846.95, and, of that loss amount, $422,003.33 was directly attributable to Howard. (*See also* Doc. No. 99, at 10 ¶ 15.) As the Final Revised Presentence Report details, Howard, who held a leadership role in the conspiracy, purchased personal identification information or credit card accounts of numerous Cleveland-area victims on the Dark Web with Bitcoin, making the purchases difficult to track. (*Id*. at 5–6 ¶¶ 9–10.) He recruited several individuals to assist in making fraudulent purchases from retailers—especially jewelry stores—using the stolen accounts, and he personally utilized a variety of techniques, such as fake identities and cash-only payments, to avoid

detection. (*Id*.) Additionally, at the time of his arrest, he ran from officers, and, once he was captured, he refused to provide his name. (*Id*. at 7 ¶ 12.) Given the size and scope of the conspiracy, the number of direct victims (jewelry stores and financial companies) and indirect victims (individuals whose identities and credit cards were stolen), Howard's leadership role in the conspiracy, and his conduct at the time of his arrest, there can be no doubt that the seriousness of the present fraud crimes still warrants a substantial sentence.

Howard's extensive criminal history, which the Court described at sentencing as "troubling" given his relatively young age of 23 and the number of convictions involving firearms, also counsels against a sentence reduction. (Doc. No. 125, at 24.) As previously noted, Howard has numerous prior convictions for similar fraud-related offenses. His prior convictions chronicled a history of victimizing unsuspecting individuals by stealing their identities and account information for his own personal gain. He also has multiple prior weapons-related convictions, including one wherein he was pulled over in a vehicle that contained a loaded Glock firearm under his seat, two magazines of ammunition, a credit card scanner, and seven credits cards belonging to other individuals. (*See* Doc. No. 99, at 12–14 ¶¶ 35–40.) Additionally, when Howard's residence was searched in connection with the present case, officers located a Ruger pistol and several rounds of ammunition, in addition to jewelry and cash. (*See also id*. at 6–7 ¶ 11.) It is clear that prior periods of incarceration have failed to impress upon him the need to refrain from engaging in criminal activity or unlawfully possessing weapons.

Further, after the Court entered judgment, Howard was convicted in two state court cases that had been pending at the time of sentencing. Specially, he was convicted in state court of attempted failure to comply with police and unauthorized use of a vehicle. (*See also id*. at 16 ¶¶

50–51.) As the government notes, had these convictions been entered before the Court sentenced Howard in the present case, they each would have resulted in two additional criminal history points. (Doc. No. 137, at 6 (citing U.S.S.G. § 4A1.1(b)).) These recent convictions, coupled with the fact that Howard was on community control in state court when he engaged in the fraud conspiracy that led to his federal charges, only serve to fortify the Court's belief that defendant remains unwilling to conform his behavior and would be unlikely to abide by any terms of early release.

Howard's post-judgment conduct also concerns the Court. Howard's Inmate Discipline Data shows that he was sanctioned for two separate infractions during his first year in BOP custody. On June 13, 2023, he threatened bodily harm. On June 18, 2023, he refused to obey an order. (Doc. No. 137-1 (Data Sheet), at 1.) His inability to comply with the rules of his institution is further evidence that Howard remains an unsuitable candidate for early release, even with conditions.

Nevertheless, as it did at the time of sentencing, the Court has taken into consideration all of the § 3553(a) sentencing factors. Included in the Court's analysis is the fact that Howard had a difficult childhood and was plagued by mental illness and substance abuse. (*See* Doc. No. 125, at 25; *see also* Doc. No. 99, at 18–20 ¶¶ 58–60, 65–68.) The Court has also considered Howard's education and employment history. (*See also* Doc. No. 99, at 20–21 ¶¶ 69–71.) But after considering all of the factors, the Court finds that the original sentence remains appropriate and necessary to protect the public from Howard's criminal activities. Additionally, for the same reasons, the Court finds a reduction of his sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just

punishment for the offenses, and afford adequate deterrence.

For the foregoing reasons, defendant's motion to reduce his sentence (as supplemented) (Doc. Nos. 134, 136) is DENIED.

**IT IS SO ORDERED**.

Dated: April 15, 2024

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**